JAMES C. SERVELLO *v.* COMMISSIONER OF
CORRECTION
(AC 26215)

Bishop, Gruendel and Foti, Js.

754

Argued March 20—officially released June 6, 2006

*David J. Reich,* special public defender, for the appellant (petitioner).

*Toni M. Smith-Rosario,* assistant state's attorney, with whom, on the brief, were *James E. Thomas,* state's attorney, and *Jo Anne Sulik,* senior assistant state's attorney, for the appellee (respondent).

*Opinion*

GRUENDEL, J. The petitioner, James C. Servello, appeals, following the granting of his petition for certification to appeal, from the judgment of the habeas court

denying his second amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly concluded that he failed to prove his claim of ineffective assistance of counsel. Specifically, the petitioner claims that he was denied effective assistance because his trial counsel, John Stawicki, failed (1) to object to the admission of hearsay statements and (2) to present expert witness testimony. We affirm the judgment of the habeas court.

The following facts and procedural history are relevant to our resolution of the petitioner's appeal. In 1996, while incarcerated, the petitioner offered to pay an undercover state police trooper to burn down the Litchfield County courthouse and damage the house and car of assistant state's attorney, David Shepack.[1] On May 12, 1998, the jury found the petitioner guilty of attempt to commit arson in the second degree in violation of General Statutes §§ 53a-49 and 53a-112 (a) (2). The trial court sentenced the petitioner to a total effective term of twenty-five years incarceration, execution suspended after fifteen years, and five years probation. The petitioner directly appealed from his conviction, claiming that the evidence was insufficient to convict him. This court affirmed his conviction, and our Supreme Court denied his petition for certification to appeal. See *State* v. *Servello*, 59 Conn. App. 362, 757 A.2d 36, cert. denied, 254 Conn. 940, 761 A.2d 764 (2000).

In *State* v. *Servello*, supra, 59 Conn. App. 365–66, this court determined that the jury reasonably could have found the following facts. "In 1996, Donald Anderson,

---

[1] In 1992, Shepack prosecuted the petitioner for arson in the first degree, arson in the second degree, arson in the third degree, criminal mischief, two counts of tampering with a witness and conspiracy to commit arson. The petitioner pleaded guilty, under *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed. 2d 162 (1970), to arson in the third degree and criminal mischief in the first degree, and was sentenced to thirteen years in prison to be served at the Osborn Correctional Institution.

an inmate at [the Osborn Correctional Institution], reported to William Grady, the supervisor of an intelligence unit at Osborn, that the [petitioner] had asked him if he knew of anyone who could set fire to the Litchfield County courthouse and to a prosecutor's house and car. Anderson's report was eventually communicated to the state police major crime squad in Litchfield. Trooper Deborah Schutt was assigned to investigate the [petitioner]. Schutt met with Anderson and asked that he wear a tape recorder. Schutt told Anderson that she would assign an undercover trooper, Clifford Labbe, Jr., to pose as 'Cliff DeMarco,' a fictitious friend of Anderson with ties to the Mafia. Anderson then was to notify the [petitioner] that he knew of someone willing to carry out his wishes. Timothy McIntosh, the administrative captain overseeing the prison facility, arranged for Labbe, posing as DeMarco, to be added to the [petitioner's] visiting list. Labbe visited the [petitioner] on three occasions.

"Taped recordings of the [petitioner's] conversations with Anderson indicate[d] that the [petitioner] wanted the courthouse burned down, and that he wanted 'someone from the outside' to set fire to the courthouse. The [petitioner] stated that he needed only three days notice to locate the necessary funds. The [petitioner] further stated that he would have Mary Jane Prescott, his girlfriend, deliver payment. Finally, the [petitioner] stated that he would obtain Shepack's license plate number for use in locating Shepack's home." Id.

During the trial, the state also called Grady, Schutt and McIntosh to testify as to what Anderson told them concerning the petitioner's plans. All three witnesses testified that Anderson explained to them that the petitioner wanted to find someone to burn down the courthouse and set fire to the prosecutor's automobile.[2]

---

[2] Additional evidence produced by the state at trial included "evidence as to the [petitioner's] available assets, including bank statements, information about a safe deposit box and information pertaining to the [petitioner's]

The petitioner, acting pro se, filed a petition for a writ of habeas corpus on December 21, 2000. In a second amended petition filed February 13, 2004, the petitioner challenged his conviction for attempt to commit arson in the second degree by claiming that his trial counsel had rendered ineffective assistance. A trial on the merits of the petitioner's ineffective assistance of counsel claims was held before the habeas court, which denied the petition. The court then granted the petition for certification to appeal, and this appeal followed. Additional facts will be set forth as necessary.

As an initial matter, we set forth the standard of review and legal principles that guide our resolution of the petitioner's appeal. "Our standard of review of a habeas court's judgment on ineffective assistance of counsel claims is well settled. In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"In *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the United States Supreme Court enunciated the two requirements that must be met before a petitioner is entitled to reversal of a conviction due to ineffective assistance of counsel. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversarial process that renders the result unreliable." (Internal quotation

investments. The documents indicated that the [petitioner] had access to funds during the period in which his meetings with Labbe occurred." *State* v. *Servello*, supra, 59 Conn. App. 367.

marks omitted.) *Vines* v. *Commissioner of Correction*, 94 Conn. App. 288, 295–96, 892 A.2d 312 (2006).

"The first part of the *Strickland* analysis requires the petitioner to establish that . . . counsel's representation fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . The right to counsel is not the right to perfect representation." (Citations omitted; internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 87 Conn. App. 560, 563, 867 A.2d 51, cert. denied, 273 Conn. 934, 875 A.2d 543 (2005).

"Turning to the prejudice component of the *Strickland* test, [i]t is not enough for the [petitioner] to show that the errors [made by counsel] had some conceivable effect on the outcome of the proceeding. . . . Rather, [the petitioner] must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . When a [petitioner] challenges a conviction, the question is whether there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt." (Internal quotation marks omitted.) *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 856, 877 A.2d 11, cert. denied, 275 Conn. 905, 882 A.2d 672 (2005).

I

The petitioner first claims that he received ineffective assistance of counsel due to his trial counsel's failure to object to hearsay evidence. Specifically, the petitioner argues that Stawicki's failure to object to the hearsay testimony of three witnesses concerning statements

made by Anderson amounted to incompetence and prejudiced the fairness of the trial. Further, the petitioner contends that the hearsay testimony indicated that he approached Anderson, and not the reverse, and that this was probative of his intent to commit the crime of arson in the second degree. We are not persuaded.

The following additional facts provide the necessary backdrop for the resolution of the petitioner's claim. During the state's case-in-chief at the criminal trial, Grady testified that Anderson approached him to report a conversation that he had with the petitioner. Grady testified that "Anderson stated to [him] that [the petitioner] was inquiring through . . . Anderson if he knew the identity of anyone on the street who would be willing to burn down a Litchfield County courthouse and to also burn down the house and automobiles of a prosecutor." Stawicki did not raise any objection to Grady's testimony on direct examination.

McIntosh then testified on direct examination and described how he met with the warden, Anderson and two state troopers, including Schutt, to discuss an undercover investigation of the petitioner. According to McIntosh, Anderson informed the attendees that the petitioner "wished to have arson committed on a Litchfield courthouse . . . and to have the house and vehicle of a district attorney in that area vandalized." Stawicki did not raise hearsay objections during McIntosh's direct testimony.

Schutt also testified on direct examination concerning the same meeting about which McIntosh had testified. When asked what Anderson told her at the meeting, Schutt answered that "[h]e stated that he had been with a dorm mate at the prison by the name of James Servello, that he had been with him several years prior and that [the petitioner] had asked him to try to get— or for himself to—if he was interested in burning down

the Litchfield courthouse." Stawicki raised no hearsay objections during Schutt's direct testimony regarding her conversations with Anderson.

At the habeas trial, Stawicki testified that, as a matter of trial strategy, he declined to object on hearsay grounds to the testimony of Grady, McIntosh and Schutt regarding what Anderson had told them. In doing so, Stawicki hoped to show that the petitioner's conversations were "jailhouse talk or fantasy" and that the petitioner had not taken a substantial step to complete the crimes of arson and criminal mischief. Stawicki further testified that objecting to the statements in question would have drawn the jury's attention to the evidence and that the evidence was cumulative of the recorded conversations.

In its decision, the court found Stawicki's testimony about his decision not to object to be credible and determined that he had employed a reasonable trial strategy.[3] In making this determination, the court found that Anderson's hearsay statements were proper "evidentiary components" of the jailhouse fantasy defense.[4]

---

[3] In its memorandum of decision, the court stated: "Stawicki testified credibly that he did not raise hearsay objections to testimony by Schutt, Grady and McIntosh about what Anderson had told them because such testimony fed into his theory of the case, his theory of defense. . . . Per Stawicki, it made little sense to object to testimony that was a component of the defenses he intended to raise, especially since the 'jailhouse fantasy' strategy required the defendant to embrace, rather than disavow, the tape-recorded conversations." (Citation omitted.)

[4] The petitioner also claims that the court improperly found, on the basis of hearsay testimony, that he had threatened to damage the property of Shepack, when he actually referred to the property of Frank Maco, another assistant state's attorney. Although Schutt testified that Anderson had informed her that the petitioner wanted to damage the property of Maco, Grady and McIntosh testified that Anderson said the petitioner wanted to damage the property of a "prosecutor" and "district attorney," respectively. Further, in the recorded conversations, the petitioner stated his intention to damage Shepack's property. We therefore cannot conclude, given a fair reading of the three witnesses' testimony in the context of the recorded conversations, that the court's finding was clearly erroneous.

The court also found that the fact that the jury found the petitioner not guilty on the charge of attempt to commit criminal mischief was evidence of the efficacy of Stawicki's overall trial strategy.[5] Furthermore, the court found that even if the hearsay testimony were excluded, it was cumulative of other properly admitted evidence of detailed recordings, which included the petitioner's inculpatory statements.[6]

We agree with the court that Stawicki did not render ineffective assistance. "[T]he decision of a trial lawyer not to make an objection is a matter of trial tactics, not evidence of incompetency. . . . [T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Citation omitted; internal quotation marks omitted.) *Toccaline* v. *Commissioner of Correction*, 80 Conn. App. 792, 801, 837 A.2d 849, cert denied, 268 Conn. 907, 845 A.2d 413, cert denied sub nom. *Toccaline* v. *Lantz*, 543 U.S. 854, 125 S. Ct. 301, 160 L. Ed. 2d 90 (2004). An "[e]xperienced [litigator may] utilize the trial technique of not objecting to inadmissible evidence to avoid highlighting it in the minds of the jury." (Internal quotation marks omitted.) *State* v. *Davis*, 76 Conn. App. 653, 665, 820 A.2d 1122

---

[5] On May 12, 1998, the jury found the petitioner not guilty on the charge of attempt to commit criminal mischief in the first degree in violation of General Statutes §§ 53a-49 and 53a-115 (a) (1).

[6] The respondent, the commissioner of correction, does not claim that the out-of-court statements of Anderson were not hearsay. Rather, during oral argument, the respondent conceded that the testimony was entered at trial under a good faith basis as part of the petitioner's course of conduct, a well established exception to the hearsay rule. Because Stawicki did not object to the testimony, the court did not offer a limiting instruction, and the jury was free to hear the statements for the truth of the matter asserted. "It is an elementary premise of evidentiary law that a statement made out-of-court that is offered to establish the truth of the facts contained in the statement is hearsay . . . . A statement that is offered to show its effect upon the hearer, however, is not hearsay." (Internal quotation marks omitted.) *State* v. *Vega*, 48 Conn. App. 178, 186–87, 709 A.2d 28 (1998).

(2003). Accordingly, Stawicki's strategy not to object to hearsay testimony was consistent with the raised defenses and appropriate under the circumstances.[7]

In sum, we agree with the court that the petitioner has failed to meet the standards of *Strickland.* The petitioner has not established that the admission of the hearsay testimony in question resulted from trial counsel's incompetence or prejudiced the fairness of his trial. As the court noted, "defense counsel was not ineffective for failing to do something this court has held to be within the scope of adequate representation." Further, the petitioner has not shown that there is a reasonable probability that, but for the exclusion of the hearsay testimony, the result of the proceedings would have been different. The petitioner therefore has failed to overcome the presumption that Stawicki's performance fell within the wide range of reasonable professional assistance.

## II

The petitioner next claims that Stawicki rendered ineffective assistance because he did not present expert testimony to discredit Anderson's statements. Specifically, the petitioner contends that Stawicki should have presented an expert at trial to testify that informants, as a rule, expect and receive compensation in exchange for providing information to authorities. We are not persuaded.

During the state's case-in-chief at the criminal trial, Stawicki cross-examined Grady, McIntosh and Schutt

[7] The petitioner also claims that because Stawicki failed to object to the hearsay testimony, he failed to preserve the issue for appellate review, which amounted to ineffective assistance of counsel. We agree with the court's finding that "the petitioner has not presented any evidence in support of such claims." Further, on the basis of the court's finding that Stawicki's tactics and strategy were consistent with the raised defenses, we concur with the court that the petitioner's claim of ineffective assistance of counsel for failure to preserve appellate issues is without merit.

regarding Anderson's role as an informant. Specifically, Stawicki asked whether Anderson had informed on other inmates in the past and whether Anderson expected to receive, or already had received, consideration in exchange for his cooperation. Stawicki did not call an expert to testify as to these questions.

At the habeas trial, the petitioner presented testimony from attorney John Watson, a legal expert, who stated that he had extensive experience with informants. Watson stated that informants generally expect to receive some benefit for providing information to the authorities. He also testified that although it was theoretically possible that an informant might not expect to receive a benefit, he never had seen that occur.

The court rejected the petitioner's claim that Stawicki's failure to call an expert witness, such as Watson, constituted deficient performance or prejudiced the petitioner. In its decision, the court made the following findings: "The trial record is clear that defense counsel placed before the jury evidence that Anderson was a jailhouse informant and may have been motivated by self-interest in approaching authorities with information about the petitioner. The jurors were free to consider that evidence—and attach to it the weight they deemed appropriate—in assessing both Anderson's motives, and the credibility of what he purportedly said to the state police and department of correction personnel. This court is not convinced, therefore, that expert testimony on the generic subject of criminal informants, and the motivations which prompt their disclosure, was necessary, or would have been more effective."

We agree with the court's conclusion that the petitioner has failed to satisfy either *Strickland* requirement. The petitioner failed to prove that Stawicki's performance was lacking for failure to call an expert witness to testify about jailhouse informants. "The fail-

ure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense." (Internal quotation marks omitted.) *Alvarez* v. *Commissioner of Correction*, 79 Conn. App. 847, 851, 832 A.2d 102, cert. denied, 266 Conn. 933, 837 A.2d 804 (2003). We also find that the absence of such testimony in this case did not affect the outcome of the trial.

The judgment is affirmed.

In this opinion the other judges concurred.