# STATE OF CONNECTICUT *v.* RUBEN T.[1]
## (AC 28187)

DiPentima, Gruendel and Borden, Js.

---

[1] In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

Argued September 18—officially released December 11, 2007

*Alice Osedach*, assistant public defender, for the appellant (defendant).

*Sarah Hanna*, special deputy assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Sandra L. Tullius*, senior assistant state's attorney, for the appellee (state).

*Opinion*

DiPENTIMA, J. The defendant, Ruben T., appeals from the judgment of conviction, rendered after a trial before a three judge panel, of murder in violation of General Statutes § 53a-54a (a)[2] and risk of injury to a child in violation of General Statutes § 53-21 (a) (1).[3]

---

[2] General Statutes § 53a-54a (a) provides in relevant part: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person . . . ."

[3] General Statutes § 53-21 (a) provides in relevant part: "Any person who (1) wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . shall be guilty of a class C felony . . . ."

On appeal, the defendant claims that the panel improperly (1) concluded that he had failed to prove the defense of extreme emotional disturbance by a fair preponderance of the evidence and (2) admitted testimony under the state of mind exception to the hearsay rule. We affirm the judgment of the panel.

The panel reasonably could have found the following facts. The defendant met the victim in late 1998. After a brief relationship, the victim became pregnant with the defendant's child. Before the child was born in December, 1999, the relationship between the defendant and the victim had fallen into discord, and after the child was born, the couple often fought over issues such as child support, visitation and parenting. The defendant often was frustrated and angered by the victim's efforts to collect child support payments and to minimize her contact with him.

On March 28, 2003, the victim planned to drop off the child for his scheduled visitation with the defendant. Over the course of that day, the defendant exchanged numerous telephone calls with the victim, arguing over the drop-off time. Ultimately, the victim arrived at the defendant's house at about 7:30 p.m.

Upon the victim's arrival at his home in Windsor, the defendant met the victim at her car and informed her that he would not take the child unless she agreed to discuss their visitation and support arrangements. When the victim refused to have any discussion with him, the defendant began walking back toward the house. The victim responded by shouting an expletive and striking the defendant from behind with an unknown object before turning her attention back toward the child.

Without further provocation, the defendant pulled from his pocket a three inch folding knife and attacked the victim with it, stabbing her twelve times in the head,

neck, face, back, chest and buttocks. The defendant then picked up his child, who had just witnessed his father brutally assault his mother, and fled the scene in the victim's car. As the defendant drove off, two neighbors who had heard the struggle came to the victim's aid and summoned police and paramedics. The victim was pronounced dead upon her arrival at Hartford Hospital a short time later.

Meanwhile, the defendant drove the victim's car from Windsor to the Hartford police station. There he passed his child, whose clothing was stained with blood, to one of the officers on duty and informed the officer that he wanted to turn himself in on a "domestic dispute." Subsequently, the defendant was transferred to the custody of the Windsor police, to whom he confessed to the murder.

The state charged the defendant with murder and risk of injury to a child. The defendant elected a trial before a three judge panel, *Mullarkey* and *Keller, Js.*, and *Hon. John F. Mulcahy, Jr.*, judge trial referee. At trial, the defendant asserted the affirmative defense of extreme emotional disturbance. After several days of trial, the panel rendered judgment convicting the defendant of both charges. The court sentenced the defendant to forty-eight years incarceration for the murder conviction, twenty-five years mandatory, and to ten years incarceration for the risk of injury conviction, to be served concurrently with the murder sentence. This appeal followed. Additional facts will be set forth as necessary.

I

The defendant first claims that the panel improperly found that he had failed to prove his affirmative defense of extreme emotional disturbance by a preponderance of the evidence. Specifically, the defendant argues that the panel could not have reasonably concluded that he

had not proved his defense because the panel improperly considered only whether a provoking or triggering event occurred, either on the day of the murder or during the days immediately prior, that exposed him to an extremely unusual or overwhelming state. Further, the defendant argues that the court improperly discredited the testimony of his expert witness. We reject both arguments.

General Statutes § 53a-54a (a) provides in relevant part: "[I]n any prosecution [for murder], it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be . . . ."

Our Supreme Court has set forth the standard of review that guides our analysis. "[O]ur review of the conclusions of the trier of fact, whether it be a judge, a panel of judges or a jury, is limited. . . . This court will construe the evidence in the light most favorable to sustaining the trial court's [judgment] and will affirm the conclusion of the trier of fact if it is reasonably supported by the evidence and the logical inferences drawn therefrom. . . . The probative force of direct and circumstantial evidence is the same." (Citation omitted; internal quotation marks omitted.) *State* v. *Crespo*, 246 Conn. 665, 676, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). "Ultimately, the question is whether upon the facts established and the inferences drawn therefrom the fact-finder could have reasonably concluded that the cumulative effect of the evidence failed to establish that the defendant acted under the influence of an extreme emotional disturbance for which there was a reasonable explanation or excuse. In sum, except where

an abuse of discretion is clearly shown, the conclusion of a trial court should be affirmed so long as it is a reasonable one on the basis of the evidence adduced and the inferences drawn therefrom. . . . In the final analysis . . . the ultimate determination of the presence or absence of extreme emotional disturbance [is] one of fact for the trier, aided by the expert testimony of both sides, but left to its own factual determinations." (Citation omitted; internal quotation marks omitted.) Id., 677–78.

Our Supreme Court has held that "[e]xtreme emotional disturbance is a mitigating circumstance which will reduce the crime of murder to manslaughter. . . . Pursuant to General Statutes § 53a-12 (b), [w]hen a defense declared to be an affirmative defense is raised at a trial, the defendant shall have the burden of establishing such defense by a preponderance of the evidence." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo,* supra, 246 Conn. 675–76.

"A homicide influenced by an extreme emotional disturbance . . . is not one which is necessarily committed in the 'hot blood' stage, but rather one that was brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then react violently, seemingly without provocation." *State* v. *Elliott,* 177 Conn. 1, 7–8, 411 A.2d 3 (1979). "For the defendant to have prevailed on this defense, he would have had to establish, by a preponderance of the evidence, that he had caused the death of the victim under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse measured from the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be. . . . To sustain his burden of establishing extreme emotional disturbance by a preponderance of the evidence, the defendant must

persuade the trier of fact that: (1) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the penal code; (2) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (3) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feeling, such as passion, anger, distress, grief, excessive agitation or other similar emotions." (Citations omitted; internal quotation marks omitted.) *State* v. *Crespo*, supra, 246 Conn. 676–77. "Consideration is given to whether the intensity of these feelings was such that his usual intellectual controls failed and the normal rational thinking for that individual no longer prevailed at the time of the act. . . . [T]he term 'extreme' refers to the greatest degree of intensity away from the norm for that individual." *State* v. *Elliott*, supra, 10.

In its memorandum of decision, the panel made specific findings with respect to each of the factual bases that would support a finding of extreme emotional disturbance. First, the panel found that "the defendant did not suffer from any emotional disturbance that consisted of a mental disease or defect that rose to the level of insanity as defined by the penal code." Further, the panel found that the defendant had indeed lost his self-control on the night he killed the victim. Most importantly, however, the panel unanimously found that the defendant's loss of self-control was not caused by "an extremely unusual and overwhelming state that was not mere annoyance or unhappiness." In support of its finding, the panel stated: "The evidence disclosed a contentious relationship between the defendant and the victim, with ongoing animosity over issues of child support and visitation for a period of four years prior to the date of the incident. For most of this time period,

the defendant and the victim were able to maintain contact and a shared parenting arrangement, despite constant arguments and consequent resentment and hurt feelings. We heard no evidence that made March 28, 2003, or the period immediately preceding that date, extremely different in intensity from any other period during the defendant's and [the victim's] relationship. Not only was there no one event or series of events that occurred out of the norm on or immediately before March 28 that reasonably provoked an extreme emotional disturbance, there also was never any single event or series of events during the course of the relationship that were so extreme they might reasonably have caused the defendant to lose control after brooding for a longer period of time."

The record in this case clearly supports the finding that when he attacked the victim, the defendant was overcome by something that caused him to lose his self-control. The panel, however, found "no reasonable explanation or excuse, measured from 'the viewpoint of a reasonable person in the defendant's situation under the circumstances as the defendant believed them to be,' to justify his loss of self-control . . . ." In reaching its conclusion, the panel noted that "[d]isputes over money, visitation, parenting and perceived infidelity were a *regular* occurrence between the victim and the defendant," and that the "circumstances on March 28, 2003, were *not significantly different* from those surrounding any of the couple's prior interactions." (Emphasis added.) Although this language does highlight the absence of a provoking or triggering event that might have led to the attack, the memorandum as a whole also makes clear that the panel examined the defendant's entire four year relationship with the victim for signs that the defendant was exposed to an extremely unusual and overwhelming state that was not mere annoyance or unhappiness, but found none.

The panel reasonably could have reached this conclusion on the basis of the evidence before it. Accordingly, we reject the defendant's first argument.

We also find no merit in the defendant's argument that the panel improperly discredited testimony by his expert witness. Although the defendant introduced expert testimony in support of his affirmative defense and the state offered no rebuttal, the court was not obligated to adopt the expert's conclusions as its own. The trier of fact can disbelieve any or all of the evidence proffered concerning the defense of extreme emotional disturbance, including expert testimony, and can construe such evidence in a manner different from the defendant's assertions. See *State* v. *DeJesus*, 236 Conn. 189, 201, 672 A.2d 488 (1996). The fact, therefore, that the defendant's expert witness supported his claim of extreme emotional disturbance, while the state chose to call no expert witness, but instead relied on cross-examination of the defendant's expert, does not require this court to determine that the panel reasonably could not have concluded that the defendant had failed to prove extreme emotional disturbance by the required standard. See id.

During cross-examination, the state elicited testimony from the defendant's expert that reasonably could have called the plausibility of his opinion into question.[4] "In a case tried before a court, the [panel] is the sole arbiter of the credibility of the witnesses and the weight to be given specific testimony. . . . On appeal, we will give the evidence the most favorable reasonable construction in support of the verdict to which it is entitled." (Internal quotation marks omitted.) *State* v. *Coscuna*, 59 Conn. App. 434, 444, 757 A.2d 659 (2000).

---

[4] For example, the defendant's expert testified that in conducting his evaluation of the defendant, he failed to explore several available sources of relevant information, including the victim's family and friends.

Thus, the record provides ample support for the panel's conclusion that the defendant had failed to establish, by a preponderance of the evidence, that he was exposed to an extremely unusual and overwhelming state that was not mere annoyance or unhappiness at the time he stabbed the victim.

## II

The defendant next claims that the court improperly admitted testimony under the state of mind exception to the hearsay rule. Specifically, the defendant claims that the panel improperly allowed the victim's mother and brother to testify that prior to the victim's death, the victim had told them of her fear of the defendant. The defendant argues that the victim's statements were hearsay and inadmissible under the state of mind exception to the hearsay rule. Further, the defendant argues that even if the victim's statements were admissible as an exception to the hearsay rule, they were not relevant to any issue before the panel.[5] We disagree.

During the state's direct examination of the victim's brother, the witness stated that at one point, the victim had expressed to him her fear of the defendant. The state then asked the witness: "[W]hat did she say?" The witness responded: "She said that one of these days, he's going to hurt me. I think one of these days, he's going to hurt me." During the state's direct examination of the victim's mother, the state elicited similar responses to essentially the same questions.[6] The defendant objected to the testimony on the grounds that the

[5] The defendant also argues that the court improperly admitted the victim's statements in violation of the rule for admissibility of nontestimonial hearsay as set forth in *Ohio* v. *Roberts*, 448 U.S. 56, 100 S. Ct. 2531, 65 L. Ed. 2d 597 (1980), overruled in part by *Crawford* v. *Washington*, 541 U.S. 36, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004). Because we hold that the statements were not hearsay, we do not reach the merits of this argument.

[6] The following colloquy occurred during direct examination of the victim's mother:

"[The Prosecutor]: Did [the victim] ever express any fear of this defendant—

responses were both inadmissible hearsay and irrelevant.[7]

"To the extent a trial court's admission of evidence is based on an interpretation of the Code of Evidence, our standard of review is plenary. For example, whether a challenged statement properly may be classified as hearsay and whether a hearsay exception properly is identified are legal questions demanding plenary review. They require determinations about which reasonable minds may not differ; there is no judgment call by the trial court, and the trial court has no discretion to admit hearsay in the absence of a provision providing for its admissibility. . . .

"We review the trial court's decision to admit evidence, if premised on a correct view of the law, however, for an abuse of discretion. . . . In other words,

"[The Witness]: Yes.

"[The Prosecutor]:—to you?

"[Defense Counsel]: Objection. Relevance. I know the court has ruled on some documents. But the same objection, whether it's relevant in her state of mind.

"The Court: Well, do we have a time period here?

"[The Prosecutor]: I was just going to ask that—

"The Court: All right.

"[The Prosecutor]:—as the next question. . . . When did [the victim] express fear of this defendant?

"[The Witness]: In 2002.

"[The Prosecutor]: All right.

"[The Witness]: I want to say it was probably late summer, early fall.

"[The Prosecutor]: How many times did she express that to you?

"[The Witness]: Several.

"[The Prosecutor]: And when she expressed fear of him, what would she say?

"[Defense Counsel]: Objection.

"The Court: Overruled.

"[The Prosecutor]: What would she say?

"[The Witness]: She told me, he's going to kill me someday."

[7] Despite the state's contentions to the contrary, the defendant properly articulated to the court the basis for his objections to the challenged testimony so as to alert the court and the state to potential error. Accordingly, we review the merits of the defendant's claims. Cf. *State* v. *Cabral*, 275 Conn. 514, 530–31, 881 A.2d 247, cert. denied, 546 U.S. 1048, 126 S. Ct. 773, 163 L. Ed. 2d 600 (2005).

only after a trial court has made the legal determination that a particular statement is or is not hearsay, or is subject to a hearsay exception, is it vested with the discretion to admit or to bar the evidence based upon relevancy, prejudice, or other legally appropriate grounds related to the rule of evidence under which admission is being sought." (Citations omitted; internal quotation marks omitted.) *State* v. *Saucier*, 283 Conn. 207, 218–19, 926 A.2d 633 (2007).

"[A]n out-of-court statement that is offered to establish the truth of the matter asserted is inadmissible hearsay unless the statement falls within a recognized exception to the hearsay rule." (Internal quotation marks omitted.) *State* v. *Dehaney*, 261 Conn. 336, 355, 803 A.2d 267 (2002), cert. denied, 537 U.S. 1217, 123 S. Ct. 1318, 154 L. Ed. 2d 1070 (2003). "An out-of-court statement is not hearsay, however, if it is offered to illustrate circumstantially the declarant's then present state of mind, rather than to prove the truth of the matter asserted." *State* v. *Blades*, 225 Conn. 609, 632, 626 A.2d 273 (1993).

In this case, the testimony of both witnesses, the victim's brother and the victim's mother, was not hearsay. Although the victim's out-of-court statements to the witnesses foreshadowed her death at the hands of the defendant, the state offered the victim's out-of-court statements not to prove that he did, in fact, harm her, but to prove circumstantially the victim's state of mind, that she was afraid of the defendant. We find no distinction between these statements and the statements challenged by the defendant in *Blades*.[8] Accordingly, we

---

[8] In *Blades*, our Supreme Court held that the following testimony regarding out-of-court statements by the victim to the witnesses, offered to prove the victim's fear of the defendant, was not hearsay. First, the victim's mother testified: "[M]y daughter, [the victim], had told me if anything happened to her to call the police department and tell them to look for [the defendant]." (Internal quotation marks omitted.) *State* v. *Blades*, supra, 225 Conn. 630. Later, the victim's coworker testified that the victim stated: "[I]f anything

conclude that the court properly overruled the defendant's hearsay objections to the witnesses' testimony.

As to the defendant's second argument, relevancy, "[e]vidence is relevant if it has any tendency to make the existence of any fact that is material to the determination of the proceeding more probable or less probable than it would be without the evidence. Conn. Code Evid. § 4-1. There is no exact or universal test of relevancy. Rather, each such determination must be guided by sound legal reasoning and judicial experience. . . . A fact is relevant to another if in the normal course of events its existence, alone or in conjunction with other facts, makes the existence of the other fact more likely or more certain. . . . The probative value of evidence is merely its tendency to persuade the trier of fact on a given issue." (Internal quotation marks omitted.) *State* v. *Glenn*, 97 Conn. App. 719, 726–27, 906 A.2d 705 (2006), cert. denied, 281 Conn. 913, 916 A.2d 55 (2007).

Our Supreme Court has held that "evidence of a victim's mental state may be relevant to establish the defendant's motive to kill the victim." (Internal quotation marks omitted.) *State* v. *Dehaney*, supra, 261 Conn. 356. Further, "[a] defendant's articulated or implied theory of defense may make the victim's state of mind material to the determination of the defendant's guilt or innocence." (Internal quotation marks omitted.) Id., 357. For example, a defendant's assertion of an extreme emotional disturbance defense may put the victim's state of mind into issue. Id.; *State* v. *Blades*, supra, 225 Conn. 635.

In this case, the defendant asserted the affirmative defense of extreme emotional disturbance. In support of this defense, the defendant elicited testimony from several witnesses that the victim was the antagonist

ever happened to [me], find the body, and let them know it was [the defendant]." (Internal quotation marks omitted.) Id., 631.

who caused the breakdown in their relationship and that his violence toward her was completely at odds with the way in which he normally handled their conflicts. Evidence that the victim harbored fear of the defendant, therefore, would be relevant to rebut his claims. Accordingly, the panel did not abuse its discretion by admitting the testimony for purposes of rebutting the defendant's affirmative defense of extreme emotional disturbance.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

---

[9] The defendant also claims that the court improperly allowed the victim's mother to testify regarding the victim's recollection of specific acts of the defendant that led to the victim's fear of him. The defendant did not object to this additional testimony at trial, and, accordingly, we do not review the claim. See *State* v. *Cabral,* supra, 275 Conn. 530–31.