ERNEST FRANCIS *v.* COMMISSIONER
OF CORRECTION
(AC 33427)

DiPentima, C. J., and Beach and Pellegrino, Js.

Argued January 14—officially released May 14, 2013

*Michael Stone*, assigned counsel, for the appellant (petitioner).

*Margaret Gaffney Radionovas*, senior assistant state's attorney, with whom, on the brief, were *Gail P. Hardy*, state's attorney, and *Jo Anne Sulik*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

PELLEGRINO, J. The petitioner, Ernest Francis, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court improperly rejected his claims of ineffective assistance of counsel. We affirm the judgment of the habeas court.

The petitioner's conviction was the subject of a direct appeal. See *State* v. *Francis*, 228 Conn. 118, 119, 635 A.2d 762 (1993). In affirming the conviction, our Supreme Court set forth the following facts: "On March 8, 1990, the [petitioner] and the victim were incarcerated at the Hartford community correctional center. The two men became involved in an altercation during which the victim and several other inmates attacked the [petitioner]. During the course of this altercation, the [petitioner] was stabbed in his leg with a shank, a prison term for a homemade weapon. The [petitioner] believed that it was the victim who had stabbed him. Both men were subsequently released from custody.

"On August 12, 1990, the [petitioner] and the victim met again. At approximately 4 p.m. on that day, two witnesses, Jennifer Green and Sandra Brown, were on the porch of Brown's residence at 165 Homestead Avenue in Hartford. At that time, they saw a young man, later determined to be the victim, walking toward them on Homestead Avenue, holding an 'ice pop' in his hand. At the same time, two additional witnesses, Victor Lowe

and Fred Faucette, were standing on the sidewalk of Homestead Avenue. They also noticed the victim.

"All four witnesses then observed a red Mitsubishi automobile drive up Homestead Avenue, pass the victim, stop suddenly, back up and halt near him. The [petitioner] then emerged from the driver's side of the car and approached the victim. An argument ensued between the two men. This confrontation continued twenty to forty feet from Lowe and Faucette.

"While the [petitioner] and victim exchanged words, the four witnesses observed, from different vantage points, that the [petitioner] held his right hand behind his back. From where they were located, both Green and Brown observed that the [petitioner]'s hand, which was behind his back, was on the handle of a knife. Upon seeing the knife, Brown commented to Green, 'He wouldn't dare do that.'

"After further words had been exchanged, the victim agreed to fight the [petitioner]. The victim did not, however, make any physical movement toward the [petitioner]. The [petitioner] then pulled the knife from behind his back and began to make stabbing motions at the victim. One of these stabbing motions cut the victim's ice pop in half as the victim was retreating.

"The victim ran into a nearby yard where he was pursued by the [petitioner]. There, the [petitioner] stabbed the victim in the upper left portion of his chest, causing his death. The [petitioner] then reentered the car and left the scene." Id., 120–21.

After a jury trial, the petitioner was convicted of murder in violation of General Statutes § 53a-54a (a) and sentenced to fifty years imprisonment. Id., 119. In March, 1995, the petitioner, representing himself but with appointed standby counsel, filed a habeas corpus

petition alleging, inter alia, that his trial counsel, attorney Kenneth Simon, provided ineffective assistance by failing to present a defense of extreme emotional disturbance.[1] After a habeas trial at which the petitioner and Simon testified, the court denied the petition for habeas corpus and the petitioner's subsequent petition for certification to appeal. See *Francis* v. *Warden,* Superior Court, judicial district of Hartford-New Britain at Hartford, Docket No. CV-95-0550706 (February 18, 1998), appeal dismissed, 63 Conn. App. 282, 775 A.2d 1004, cert. denied, 256 Conn. 933, 776 A.2d 1150 (2001).

In his present habeas corpus petition the petitioner alleges, inter alia, that Simon provided ineffective assistance because he (1) failed to investigate and to present a defense of extreme emotional disturbance and failed to request a jury charge on the defense,[2] and (2) failed to

[1] As this court has recognized, "[o]ur Supreme Court has held that [e]xtreme emotional disturbance is a mitigating circumstance which will reduce the crime of murder to manslaughter. . . . A homicide influenced by an extreme emotional disturbance . . . is not one which is necessarily committed in the 'hot blood' stage, but rather one that was brought about by a significant mental trauma that caused the defendant to brood for a long period of time and then react violently, seemingly without provocation. . . . To sustain his burden of establishing extreme emotional disturbance by a preponderance of the evidence, the defendant must persuade the trier of fact that: (1) the emotional disturbance is not a mental disease or defect that rises to the level of insanity as defined by the penal code; (2) the defendant was exposed to an extremely unusual and overwhelming state, that is, not mere annoyance or unhappiness; and (3) the defendant had an extreme emotional reaction to it, as a result of which there was a loss of self-control, and reason was overborne by extreme intense feeling, such as passion, anger, distress, grief, excessive agitation or other similar emotions." (Citations omitted; internal quotation marks omitted.) *State* v. *Ruben T.,* 104 Conn. App. 780, 785–86, 936 A.2d 270 (2007), cert. denied, 285 Conn. 917, 943 A.2d 476 (2008).

[2] The respondent, the commissioner of correction, moved to dismiss this claim on res judicata grounds because it had been presented and denied in the petitioner's prior habeas proceeding. The habeas court denied the respondent's motion, finding, inter alia, that newly discovered evidence supported the petitioner's claim. After the court denied the respondent's motion, the respondent filed a return to the petitioner's second amended habeas corpus petition and again raised the doctrine of res judicata as to the

move to disqualify the presiding judge at the petitioner's hearing in probable cause and the criminal trial. The habeas trial was held on October 15, 2009, and March 2, 2010; the court heard expert testimony from an attorney and a psychiatrist regarding the petitioner's claims. Following the trial, the court denied the petitioner's petition and subsequently granted his petition for certification to appeal. This appeal followed. Additional facts and procedural history will be introduced as necessary.

We first set forth the standard of review and legal principles applicable to the petitioner's appeal. "Although a habeas court's findings of fact are reviewed under the clearly erroneous standard of review . . . [w]hether the representation a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 301 Conn. 697, 706, 23 A.3d 682 (2011).

A claim of ineffective assistance of counsel as enunciated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), "consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*,

petitioner's ineffective assistance claim. In denying the petitioner's habeas corpus petition, the court, *T. Santos, J.*, cited the law of the case doctrine and the evidence presented at the petitioner's habeas trial in rejecting the respondent's position, and ultimately addressed the claim on the merits. Likewise, we also will review the merits of the petitioner's ineffective assistance claims on appeal.

130 Conn. App. 291, 294–95, 21 A.3d 969, cert. denied, 302 Conn. 926, 28 A.3d 337 (2011). Our Supreme Court has stated that "the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances," and that "[j]udicial scrutiny of counsel's performance must be highly deferential." (Internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 706. "[T]here is a strong presumption that the trial strategy employed by a criminal defendant's counsel is reasonable and is a result of the exercise of professional judgment . . . ." (Internal quotation marks omitted.) *Servello* v. *Commissioner of Correction*, 95 Conn. App. 753, 761, 899 A.2d 636, cert. denied, 280 Conn. 904, 907 A.2d 91 (2006).

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (Internal quotation marks omitted.) *Boyd* v. *Commissioner of Correction*, supra, 130 Conn. App. 295. A petitioner's claim will "succeed only if both prongs are satisfied. . . . Unless a defendant makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unworkable." (Citation omitted; internal quotation marks omitted.) Id. "A court can find against a petitioner . . . on either the performance prong or the prejudice prong, whichever is easier." *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.

I

The petitioner first asserts that Simon provided ineffective assistance because he failed to investigate a defense of extreme emotional disturbance and failed to present or to request a jury instruction on this defense during the petitioner's criminal trial. We are not persuaded by either contention.

The following additional facts are relevant to this claim. As our Supreme Court recounted on direct appeal: "The [petitioner] testified on his own behalf [at his criminal trial] . . . that, on the date of the homicide, he had been driving a car that his sister had rented. He and two passengers were driving on Homestead Avenue when the rental car was struck by an object. When the [petitioner] got out to inspect the car, he confronted the victim who, he suspected, had thrown the object. Although the [petitioner] did not recognize the victim initially, he soon recalled the jailhouse incident. The two men then began the argument that led to the stabbing. The [petitioner] claimed that he had been 'nervous and shaken' during this argument. He also claimed that friends of the victim had approached the two of them. At this point, the [petitioner] reached for a folding knife in his back pocket.

"The [petitioner] also testified that when the victim had swung the hand holding the ice pop, juice from the ice pop had blinded him. The [petitioner] further claimed that, during the struggle that ensued, he had swung his knife only once and had not realized that he had struck anything until he had noticed blood on the knife and had seen the victim fall to the ground." *State v. Francis*, supra, 228 Conn. 121–22. Our Supreme Court referred to the petitioner's theory of the case as "[resting] on the assertion of an 'ice pop defense': blinded by the juice of the victim's ice pop, [the petitioner] . . . swung his knife randomly, and did not intend to stab the victim." Id., 129.

At the first habeas trial, Simon testified that the petitioner had given him "different versions of what had happened . . . right up until the time that [the petitioner] testified" at his criminal trial, which "handcuffed [Simon's] decision-making process."[3] Specifically, the

---

[3] Simon did not testify at the petitioner's second habeas trial; however, the habeas court admitted the transcripts of the petitioner's first habeas trial into evidence during the second habeas proceeding.

petitioner told Simon's investigator early in the case that "the victim was stabbed by his own knife, that he fell on the knife or against the knife." The petitioner also told the investigator at one point that "[he wasn't] there at all." Simon further testified that "[he] really didn't know what [the petitioner's] defense was going to be, even until . . . the state had rested its case [b]ecause for so long a time [he] had been left with either, it was an accident or [the petitioner] wasn't there. [The petitioner] never told [him] that he . . . felt that he was emotionally disturbed at the time of this offense." He also testified that he believed the petitioner's account of the assault in jail "would have provided very hard evidence of a motive for [the petitioner] to go after [the victim]," and that he did not believe that the circumstances of the crime supported a defense of extreme emotional disturbance. Simon indicated that he understood the defense of extreme emotional disturbance to be: "[I]f the situation presented itself as a stabbing, where you get stabbed and then you stab immediately thereafter . . . I would think that the defense might lie. I don't—there is a time frame here between the time of the . . . original incident [in prison] . . . and the later incident that takes place on the street. And the case law is pretty clear about things having to happen immediately or very quickly. That's my understanding . . . ."[4]

The first habeas court denied the petitioner's ineffective assistance claims. Specifically, the court found that

[4] Simon's interpretation of the extreme emotional disturbance as requiring "things . . . to happen immediately or very quickly" is at odds with well settled precedent establishing that "[a] homicide influenced by an extreme emotional disturbance . . . is not one which is necessarily committed in the hot blood stage . . . ." (Internal quotation marks omitted.) *State* v. *Ruben T.*, 104 Conn. App. 780, 785, 936 A.2d 270 (2007), cert. denied, 285 Conn. 917, 943 A.2d 476 (2008). As discussed in further detail herein, however, we agree with the habeas court that, "[d]espite his misunderstanding . . . Simon did not perform deficiently by failing to investigate or present such a defense."

Simon had considered a defense of extreme emotional disturbance, but on the basis of the information supplied to him by the petitioner, he chose instead to pursue the defense of accident. See *Francis* v. *Warden*, supra, Superior Court, Docket No. CV-95-0550706. The court also found that the petitioner's trial testimony did not support a defense of extreme emotional disturbance. Id.

At the second habeas trial, the petitioner presented the testimony of attorney Jeffrey Beck as an expert on criminal defense. Beck testified that, on the basis of his review of materials in the case and the facts as set forth in our Supreme Court's decision on direct appeal, there was enough evidence in the record to assert an extreme emotional disturbance defense. Beck further opined that such a defense "had a good chance of being successful" because the jailhouse attack involving the petitioner exposed him to "an overwhelming state" and he "was still brooding over it four months later," and that "obviously the feelings of intensity were still there" when the petitioner encountered and ultimately stabbed the victim. Beck also testified that Simon's understanding of the extreme emotional disturbance defense was not a correct statement of the law, and that he had confused the requirements of the defense with a "heat of passion" defense.

Peter Zeman, a psychiatrist, also testified at the habeas trial. Zeman indicated that the petitioner's habeas counsel contacted him in 2007, and asked him to evaluate the petitioner and to opine whether an extreme emotional disturbance defense would have been viable if Simon had raised it at the criminal trial. Zeman testified that he interviewed the petitioner three times between 2007 and 2009. Following his meetings with the petitioner and his review of the police report, arrest warrant application, presentence report and psychological testing report related to the petitioner's case, Zeman

opined that "on August 12, 1990, and for a period of time before that date, [the petitioner] was suffering from what we would [diagnose] as a post-traumatic stress disorder" triggered by the March, 1990 jailhouse attack. Zeman further testified that the petitioner's symptoms of post-traumatic stress disorder would be indicative of extreme emotional disturbance.[5]

The habeas court rejected the petitioner's ineffective assistance claim, stating that "at no time did the petitioner indicate [to Simon] that he had an extreme emotional reaction to the incident in jail which led him to lose self-control when he saw the victim on the street approximately five months later," which would have led Simon to investigate such a defense. The court also stated that even if Simon *had* further investigated an extreme emotional disturbance defense, the petitioner had not demonstrated what benefit any additional investigation would have revealed, as the petitioner's jail incident was never documented, the petitioner did not testify as to any effects that the incident had on him beyond physical scarring, and "there is simply no credible evidence that a psychiatric evaluation in 1992," when the criminal trial occurred, would have revealed the same information about the petitioner's purported mental state after the jail incident that he relayed to Zeman in 2007. The court further found that, while there

---

[5] In its memorandum of decision, the habeas court stated that it "[did] not find Zeman's opinion to be particularly reliable." Although the petitioner argues that the court erred in making this credibility determination, it is well settled that "[t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 717, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008). "It was the court's function to assess the testimony of all the witnesses who testified at the habeas proceeding. We decline the petitioner's invitation to disturb the court's findings in that regard." *Doehrer* v. *Commissioner of Correction*, 68 Conn. App. 774, 785, 795 A.2d 548, cert. denied, 260 Conn. 924, 797 A.2d 520 (2002).

may have been sufficient evidence for the trial court to instruct the jury on the extreme emotional disturbance defense,[6] the petitioner had not demonstrated a reasonable probability that the outcome of his trial would have been different if Simon had requested such an instruction.

On the basis of our review of the record, we agree with the habeas court that Simon did not provide ineffective assistance. It is axiomatic that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. In particular, what investigation decisions are reasonable depends critically on such information. For example, when the facts that support a certain potential line of defense are generally known to counsel because of what the defendant has said, the need for further investigation may be considerably diminished or eliminated altogether. *And when a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable.*" (Emphasis added.) *Strickland* v. *Washington*, supra, 466 U.S. 691.

Here, the evidence in the record indicates that the petitioner never indicated to Simon that he felt emotionally disturbed at the time of the stabbing; instead, he

[6] In reaching this conclusion, the court noted that at the time of the petitioner's criminal trial, "[a] defendant [was] entitled to have any instructions presented relating to any theory of defense for which there [was] any foundation in the evidence, no matter how weak or [incredible] . . . ." (Internal quotation marks omitted.) *State* v. *Bryan*, 34 Conn. App. 317, 324, 641 A.2d 443 (1994). In *State* v. *Person*, 236 Conn. 342, 353, 673 A.2d 463 (1996), however, our Supreme Court held that "a defendant is entitled to a requested instruction [on extreme emotional disturbance] only if there is sufficient evidence for a rational juror to find that all the elements of the defense are established by a preponderance of the evidence."

provided varying versions of events and ultimately stated that he stabbed the victim by mistake. The record also demonstrates that the petitioner never expressed symptoms of trauma or emotional disturbance resulting from the jailhouse incident until he asserted his ineffective assistance claims based on Simon's failure to pursue an extreme emotional disturbance defense, and the habeas court found no credible evidence that a psychiatric evaluation in 1992 would have revealed any of the petitioner's purported symptoms. Furthermore, although Simon knew about the jailhouse incident, he made the determination that the incident would have provided "very hard evidence of a motive" for the petitioner to attack the victim, which would have been harmful to the petitioner's case. See, e.g., *Lewis* v. *Commissioner of Correction*, 89 Conn. App. 850, 868, 877 A.2d 11 (habeas court will not second-guess tactical decisions made in exercise of professional judgment), cert. denied, 275 Conn. 905, 882 A.2d 672 (2005). In light of the information Simon received from the petitioner, and the deference afforded to counsel's strategic decisions, we cannot conclude that Simon's failure to investigate or present an extreme emotional disturbance defense was deficient performance, and, accordingly, the petitioner's ineffective assistance claim is without merit.[7] See *Servello* v. *Commissioner of Correction*,

---

[7] Simon's misunderstanding of the extreme emotional disturbance defense does not alter our conclusion that he provided effective assistance to the petitioner. Though the petitioner relies on *DeLuca* v. *Lord*, 77 F.3d 578 (2d Cir.), cert. denied, 519 U.S. 824, 117 S. Ct. 83, 136 L. Ed. 2d 40 (1996), to support his claim that abandonment of an extreme emotional disturbance defense because of counsel's misunderstanding of the defense cannot be considered a reasonable strategic choice, his argument is unavailing. In *DeLuca*, the petitioner was indicted for murder, and the prosecution portrayed the petitioner as a "sinister figure . . . who lured her young prey into a sexual assignation and then killed him." Id., 581. Though the petitioner indicated that she had been abducted, threatened, beaten and raped by the man she eventually killed, her counsel declined to pursue an extreme emotional disturbance defense "because of [the petitioner's] aversion to psychiatrists." Id., 586. The defense rested at trial without calling any witnesses or presenting any testimony or evidence indicating that the petitioner

supra, 95 Conn. App. 761; see also *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.

Simon's failure to request a jury instruction on the extreme emotional disturbance defense likewise did not constitute ineffective assistance. The jury had before it the testimony of four eyewitnesses who saw the stabbing, as well as the testimony of the petitioner, who indicated that he did not recognize the victim at first but eventually recalled him from the jailhouse incident, that an argument ensued between them; *State* v. *Francis*, supra, 228 Conn. 120–21; that he was " 'nervous and shaken' "; id., 121; during the argument, and that he unintentionally stabbed the victim while blinded by juice from the victim's ice pop. Id., 122. Even if we assume arguendo that Simon should have requested a jury instruction on the defense of extreme emotional disturbance, the petitioner has failed to demonstrate a reasonable probability that the jury would have accepted the defense and found him guilty of manslaughter rather than murder. Accordingly, his ineffective assistance claim fails. See *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.

II

We turn next to the petitioner's claim that Simon provided ineffective assistance because he failed to move to disqualify Judge Miano, who had signed the

had been raped. Id., 581. The District Court found it likely that counsel did not understand the extreme emotional disturbance defense and thought it referred to a form of mental illness; the United States Court of Appeals for the Second Circuit ultimately held that counsel's premature rejection of the defense was unreasonable, inter alia, because in light of the facts of the case and the prosecution's evidence, "a defense based on [extreme emotional disturbance] offered virtually the only realistic chance of avoiding a conviction for second degree murder." Id., 588. By contrast, here, even if Simon had understood the extreme emotional disturbance defense correctly, the petitioner did not provide him with any information about the crime that would have suggested such a defense would be viable.

petitioner's arrest warrant, from presiding at the petitioner's hearing in probable cause and his criminal trial. At the habeas trial, Beck testified that Judge Miano's continued involvement with the petitioner's case after signing his arrest warrant "may have [resulted in] an appearance of impropriety which rises to the level of a structural error which may affect his due process rights to a fair trial," and that Simon should have asserted such a claim but failed to do so. The habeas court rejected the petitioner's claim, recognizing that "a judge who signs the warrant for a defendant's arrest is not automatically disqualified from presiding over the defendant's hearing in probable cause," and, further, that the petitioner's claims regarding Judge Miano's purported bias were supported by only "mere speculation and conjecture divorced from any factual predicate of partiality." We agree with the habeas court that Simon's failure to move to disqualify Judge Miano did not constitute ineffective assistance.

Initially, we reject the petitioner's assertion that General Statutes § 51-183h precluded Judge Miano from presiding over the petitioner's hearing in probable cause. Section 51-183h provides: "No judge may preside at the hearing of any motion attacking the validity or sufficiency of any bench warrant of arrest which he has signed." A hearing in probable cause is not a hearing on a motion "attacking the validity or sufficiency" of the arrest warrant, and accordingly, § 51-183h does not provide a basis for disqualification in this case. Cf. State v. Reynolds, 264 Conn. 1, 27, 836 A.2d 224 (2003) (probable cause hearing "designed to safeguard an accused's rights by requiring the state to demonstrate, at an early stage of the prosecution, that the evidence of the defendant's guilt is sufficient to warrant a prosecution in connection with the particular charge"), cert. denied, 541 U.S. 908, 124 S. Ct. 1614, 158 L. Ed. 2d 254 (2004).

Similarly, we are not persuaded by the petitioner's claim that then canon 3 (c) of the Code of Judicial Conduct (2010)[8] required Judge Miano's disqualification from presiding over the petitioner's criminal trial. Canon 3 (c) provided in relevant part: "(1) A judge should disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to instances where: (A) the judge has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding . . . ." It is well settled that canon 3 (c) "encompasses two distinct grounds for disqualification: actual bias and the appearance of partiality. . . . As such, [t]o prevail on [a] claim of a violation of this canon, [a party] need not show actual bias. The [party] has met its burden if it can prove that the conduct in question gave rise to a reasonable appearance of impropriety." (Citation omitted; internal quotation marks omitted.) *Tracey* v. *Tracey*, 97 Conn. App. 278, 281, 903 A.2d 679 (2006). As this court has stated, "[t]he question is not whether the judge is impartial in fact. It is simply whether another, not knowing whether or not the judge is actually impartial, might reasonably question his . . . impartiality, on the basis of all of the circumstances." (Internal quotation marks omitted.) *State* v. *Petaway*, 107 Conn. App. 730, 738, 946 A.2d 906, cert. denied, 289 Conn. 926, 958 A.2d 162 (2008).

The petitioner asserts that a reasonable person would "certainly question not only the wisdom, but the propriety of the same judicial authority shepherding the petitioner through the prosecutorial process," and that these questions gave rise to a sufficient appearance of impropriety to warrant the disqualification of Judge

[8] We note that in 2011, the substance of canon 3 (c) was transferred to rule 2.11 of the Code of Judicial Conduct.

Miano under canon 3 (c).[9] Contrary to the petitioner's argument, however, it is well settled that a judge's involvement in more than one stage of a criminal case does not per se create an appearance of partiality requiring disqualification. Indeed, as our Supreme Court has stated: "[T]he law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially," and "a judge's participation in the preliminary stages of a case, and the knowledge he or she thereby gains, will not ordinarily preclude his or her continued participation in the same case thereafter." *State* v. *Rizzo*, 303 Conn. 71, 119–20, 31 A.3d 1094 (2011), cert. denied, U.S. , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012); see also *Tracey* v. *Tracey*, supra, 97 Conn. App. 283–84 ("the bias or prejudice sufficient to result in a disqualification must stem from an extrajudicial source and result in an opinion

_____

[9] In his brief, the petitioner asserts that Judge Miano's "partiality and animus towards the petitioner is reflected in his comments at sentencing," where Judge Miano purportedly "[referred] to 'areas' of the petitioner's trial testimony as 'perjury' . . . that strain credulity" arid made allegedly disparaging comments about the petitioner's impact on impressionable young people. It is not clear from the record whether the petitioner cited these alleged examples of bias during the proceedings before the habeas court. In any event, however, our Supreme Court has stated that "[t]he concept of impermissible judicial bias or prejudice contemplates the formation of a fixed *anticipatory judgment* on the part of the judge, as contradistinguished from an open state of mind which will be governed by the law and the facts. . . . [T]here is nothing impermissible about an opinion formed by a judge *after* a trial has concluded . . . . Rather, a trial judge will normally and properly form opinions on the law, the evidence and the witnesses, from the presentation of the case. These opinions and expressions thereof may be critical or disparaging to one party's position, but they are reached after a hearing in the performance of the judicial duty to decide the case, and do not constitute a ground for disqualification. . . . Thus, [t]he judge who presides at a trial may, upon completion of the evidence, be exceedingly ill disposed towards the defendant . . . . *But the judge is not thereby recusable for bias or prejudice, since his knowledge and the opinion it produced were properly and necessarily acquired in the course of the proceedings .* . . ." (Citations omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Rizzo*, 303 Conn. 71, 125–26, 31 A.3d 1094 (2011), cert. denied, U.S. , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012).

on the merits on some basis other than what the judge learned from his participation in the case" [internal quotation marks omitted]).

With respect to the petitioner's contention that Judge Miano's involvement in multiple stages of the criminal prosecution was a "structural error" affecting the petitioner's due process rights and requiring "immediate reversal," we are not persuaded. As our Supreme Court has recognized, "a judge's failure to disqualify himself or herself will implicate the due process clause only when the right to disqualification arises from *actual bias* on the part of that judge." (Emphasis in original.) *State* v. *Canales*, 281 Conn. 572, 594, 916 A.2d 767 (2007); id., 592 (further stating that "although it is much preferred that a judge who issues a warrant should not preside over the probable cause hearing in the same matter, the failure to adhere to such a practice does not constitute a constitutional violation").[10] The petitioner contends that actual bias here "may be inferred" from the fact that Judge Miano, having issued the arrest warrant, had a "significant personal and . . . professional stake" in the outcome of the probable cause hearing because "a finding of lack of probable cause would [lead

---

[10] The petitioner appears to challenge the holding in *Canales*, suggesting that the actual bias standard provides a lower level of protection for due process rights than "the minimum threshold required by [f]ederal law," and claiming that under the purported federal standard, even the "mere appearance of an injustice . . . will serve to violate due process." This argument is not persuasive. As our Supreme Court has stated, the United States Supreme Court consistently has held that judicial disqualification rises to the level of a due process violation only upon the judge's actual bias, and has "reaffirmed the principle that the requirements of due process are less rigorous than those of the Code of Judicial Conduct, which mandates *both* impartiality and the appearance of impartiality." (Emphasis in original.) *State* v. *Canales*, supra, 281 Conn. 594; see also *State* v. *Rizzo*, supra, 303 Conn. 115–16 ("[j]udicial disqualification claims rarely raise due process questions; more typically, they invoke statutes, rules or common law imposing much stricter standards than are required constitutionally. . . . The United States Supreme Court has found judicial bias claims to be due process violations only in egregious cases" [citations omitted]).

to] the conclusion that the warrant had been signed in error." Our Supreme Court has repeatedly rejected claims of due process violations founded on similar allegations. See *State* v. *Canales*, supra, 595–96 ("[T]he defendant argues that, because the judge was required to make a determination of probable cause for the purpose of issuing the warrants, his ability to consider objectively the question of probable cause for the purpose of the . . . hearing might reasonably be questioned . . . . Even if we were to agree that an appearance of bias arose from those circumstances, we would not conclude that the trial court's actions violated due process without some indication of actual bias."); see also *State* v. *Rizzo*, supra, 303 Conn. 117 ("a judge's pretrial involvement in a criminal case has not been thought to raise any constitutional barrier against [his] presiding over the criminal trial" [internal quotation marks omitted]).

Because no grounds existed requiring Judge Miano's disqualification from presiding over the petitioner's hearing in probable cause and criminal trial, Simon's failure to move for disqualification did not constitute deficient performance. Accordingly, the petitioner's ineffective assistance claim fails. See, e.g., *Ham* v. *Commissioner of Correction*, supra, 301 Conn. 704.

The judgment is affirmed.

In this opinion the other judges concurred.