TYSHUN WILLIAMS v. COMMISSIONER OF
CORRECTION
(AC 29690)

Harper, Lavine and Beach, Js.

---

Argued May 26—officially released October 6, 2009

*Robert Tilewick*, special public defender, for the appellant (petitioner).

*Lisa A. Riggione*, senior assistant state's attorney, with whom, on the brief, were *John A. Connelly*, state's attorney, and *Cynthia S. Serafini*, senior assistant state's attorney, for the appellee (respondent).

*Opinion*

HARPER, J. The petitioner, Tyshun Williams, appeals from the judgment of the habeas court, *A. Santos, J.*, denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly determined that he received effective assistance of counsel. We affirm the judgment of the habeas court.

The following undisputed facts and procedural history are relevant to the resolution of the petitioner's claim. On September 29, 2003, the petitioner pleaded guilty to robbery in the first degree in violation of General Statutes § 53a-134 (a) (2) relating to his involvement in the robbery of a credit union in Waterbury. In connection with the plea, the state alleged that the petitioner, along with four codefendants, agreed to rob the credit union, and, on the morning of October 1, 2002, the petitioner, armed with two handguns and his face covered, entered the credit union accompanied by a codefendant. The petitioner jumped over the teller's counter with a gun in each hand and pointed one gun at the teller's head and the other at her back. The petitioner demanded money, and the teller complied. The petitioner and the codefendant then fled the credit union with approximately $20,000.

Several codefendants later were apprehended and gave statements to the police implicating the petitioner. In October, 2002, the petitioner was arrested and charged with conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 and 53a-134 (a) (2), and robbery in the first degree in violation of § 53a-134 (a) (2). The petitioner admitted his involvement in the robbery and provided a full statement to the police. Originally, during plea negotiations, the state offered the petitioner and the codefendants fifteen years imprisonment. The offer was reduced to twelve years of incarceration with five years of special parole. That offer remained open from December, 2002, to September 26, 2003. The petitioner, heeding his mother's advice, did not accept the twelve year offer.

On Friday, September 26, 2003, the day jury selection was to begin, the petitioner was afforded one last opportunity to accept the offer. The petitioner's mother could not be contacted on that day and was not present in

court.[1] The petitioner did not accept the twelve year offer, and it was withdrawn. The petitioner's mother, however, accompanied the petitioner to court on the following Monday, September 29, 2003, at which time the petitioner entered a plea of guilty to robbery in the first degree. In regard to the conspiracy charge, the prosecutor entered a nolle prosequi. On November 7, 2003, the trial court, *Iannotti, J.,* sentenced the petitioner to a total effective term of fifteen years imprisonment, five of which are mandatory, followed by five years special parole. During these proceedings and during the plea negotiations, the petitioner was represented by counsel, Thomas Conroy.

The petitioner did not move to withdraw his plea and did not file a direct appeal. On May 9, 2006, the petitioner filed an amended petition for a writ of habeas corpus. In count one of his amended petition, the petitioner claimed that Conroy was ineffective for failing (1) to use mitigating factors in negotiating a fair plea bargain, (2) to investigate facts of the case that would be introduced as mitigating factors, including whether the petitioner suffered from any mental illness, (3) to ask the court to appoint a guardian ad litem and (4) to acknowledge that the petitioner could not knowingly, intelligently and voluntarily enter a guilty plea. In count two, the petitioner claimed that he was denied due process of law because his pleas were not made voluntarily, knowingly and intelligently.

During the habeas proceedings, four witnesses testified: Conroy; Jay Cudrin, a clinical psychologist who

---

[1] On at least three occasions prior to September 26, 2003, the petitioner, accompanied by his mother and his attorney, attended proceedings before the trial court, *Iannotti, J.,* relating to the robbery of the credit union. At those proceedings, the petitioner's mother was permitted to address the court. The petitioner's mother told the court that the petitioner was "slow," that he has a "mental illness" and that he had attended special schools all of his life. The petitioner did not take advantage of the twelve year plea offer on those prior occasions.

examined the petitioner; attorney Leon Kaatz, an expert in habeas corpus matters; and the petitioner. Other evidence was also considered by the court, including transcripts from the numerous proceedings before Judge Iannotti, Conroy's file, a packet containing the results of the diagnostic tests administered to the petitioner by Cudrin, and the petitioner's medical and mental health records.[2]

Cudrin testified that he met with the petitioner in March, 2006, for an evaluation, during which Cudrin administered several psychological tests to the petitioner. Cudrin testified that one of the tests administered revealed that the petitioner had an intelligence quotient of sixty–nine, which is in the lowest 2 percent of the population. Cudrin, however, was unable to make a diagnosis regarding mental retardation because he did not have any information about the petitioner before he became eighteen years of age. In addition, because the petitioner did not score significantly below average on all the subtests and because his word recognition score was at a high school level and in the thirtieth percentile, Cudrin did not opine that the petitioner was mentally retarded. Cudrin also testified that the test results showed that the petitioner has "very poor judgment" and an "antisocial personality disorder."[3] Furthermore, Cudrin admitted that there existed a possibility that the petitioner was malingering and that Cudrin did not know the petitioner's mental state at the time the petitioner had committed the robbery.

[2] As the court noted: "The petitioner's history of limited mental health and limited mental functioning is documented in the records from Harmony Hill School in Rhode Island. The records document his hospitalizations at Elmcrest at the age of six, followed by Mount Sinai Hospital and Riverview [Hospital]. His mental limitations are documented in a psychiatric evaluation at the age of nine."

[3] Cudrin testified: "This is a diagnosis that's given to people who show repeated disregard for social rules, who participate in criminal behavior, who [are not] terribly concerned about relationships or the effect of their behavior on relationships."

Conroy testified that he investigated the case and shared the information about the case and the plea negotiations with the petitioner. Although Conroy could not recall the amount of time he had spent with the petitioner, Conroy testified that he was able to communicate with the petitioner. Conroy testified that he informed the petitioner that the case against him was strong and that his advice to the petitioner was to accept the twelve year offer. Conroy also testified that he spoke to the petitioner's mother on a "regular basis," and, although he could not remember the specifics of the conversations he had with her, he strongly believed that he had informed the petitioner's mother that there was compelling evidence against the petitioner. Conroy did not remember the petitioner asking him to obtain his mental health records and stated that he did not obtain them because the plea offer was "firm" and he was "not given a presentence investigative right to argue for a lesser sentence." Finally, Conroy testified that the petitioner and his mother were unhappy with the twelve year offer.

Kaatz testified that the presence of the petitioner's mother in court and the degree of her participation was "highly unusual." He also testified that such involvement should have prompted Conroy to request a competency examination and to obtain the petitioner's mental health records for the purpose of assisting him during plea bargaining, sentencing or an alternative resolution such as insanity or incompetency. Kaatz also opined that these circumstances should have prompted counsel to maintain close communication with the petitioner's mother to facilitate communication with the petitioner. Kaatz, however, admitted that if Conroy was able to communicate with the petitioner, he had no obligation to procure the assistance of a third person and that on the basis of the facts of the case, the fifteen

year sentence that the petitioner received was reasonable.

The petitioner testified that he lived with his parents and in group homes, was treated by psychologists, received social security assistance and needed his mother to perform everyday tasks, such as paying his bills for him. He also testified that he previously had been arrested for drug related offenses and that his mother had accompanied him to court and stood beside him during most court appearances. The petitioner further testified that Conroy never discussed trial strategy with him and did not obtain his medical records, even though he had asked Conroy to do so. The petitioner verified that on September 26, 2003, the offer was twelve years and that he asked Judge Iannotti to "wait" because his mother was not present, but the court refused to do so. Although the petitioner testified that he had wanted to accept the offer, he admitted that he was aware on September 26, 2003, that he was rejecting the offer. The petitioner testified that Conroy had advised him that it was his last chance to accept the twelve year offer and that if he rejected it, the offer would be "taken off the table . . . ." Further, the petitioner testified that when he had pleaded guilty, he was not under the influence of drugs or alcohol. The petitioner also testified that during the plea canvass, he informed the court that his plea had been entered freely and voluntarily and that he had the opportunity to consult with Conroy prior to making his plea. The petitioner testified that he was dissatisfied with Conroy's representation because he wanted a suspended sentence and because Conroy did not request his mental health records. The petitioner also was unhappy with Conroy's representation because Conroy allegedly lied to him regarding the petitioner's involvement in an unrelated matter.

After reviewing the evidence before it, the habeas court found that the state had a strong case against the

petitioner and that there was no defense on the merits of the case. The court also found that Conroy was able to communicate with the petitioner regarding his criminal case and that the petitioner was unhappy with Conroy's representation because the petitioner did not like the terms of the state's plea deal. The court found that Conroy had spoken to the petitioner's mother on a regular basis and that, although the petitioner was of an adult age of twenty-one at the time of the court proceedings, his mother was in court on almost every occasion. The court further found: "There is no indication in the underlying record that either the [trial] court, the prosecuting attorney or attorney Conroy had concerns regarding [the] petitioner's mental abilities that rose to the level of requesting either a competency evaluation or requesting the appointment of a guardian ad litem. Attorney Conroy could not recall being asked to get [the] petitioner's mental health record, and he did not, in fact, order those records for purposes of his representation of [the] petitioner. [Although] Judge Iannotti permitted [the] petitioner's mother to address the court and [to] interact with [the] petitioner, it also is patently evident that Judge Iannotti was not permitting [the] petitioner's mother to speak for him in any representative capacity." Moreover, the court found that although the petitioner's mother was able to address the court, "it is evident from the transcripts that [the] petitioner conferred with attorney Conroy" and that the petitioner "addressed the court on several occasions and discussed concerns he had regarding the resolution of his matters." Finally, the court found that "Judge Iannotti thoroughly canvassed [the] petitioner at the time of his guilty plea and found the plea to be knowing, voluntary and made with the assistance of competent counsel."

The court then concluded that as to count one of his amended petition, the petitioner failed to meet his

burden under both prongs of the test articulated in *Strickland* v. *Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), as modified by *Hill* v. *Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). The court determined that the petitioner "has [not] shown deficient performance by [his trial attorney] . . . . Even if this court were to assume that such a showing had been made, which has not been made, [the] petitioner has not shown [that] there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. [The] [p]etitioner has also not shown that the alleged deficiencies . . . would have been successful had [his trial attorney] done what [the] petitioner presently alleges should have [been] done. Consequently, the claim in count one, notwithstanding the testimony of [Cudrin and Kaatz], is without merit and must be denied." Relying on its resolution of the first count of the petition, the court declined to grant any relief as to the second count. The court, thereafter, denied the petition for a writ of habeas corpus and rendered judgment accordingly. On February 27, 2008, the petitioner filed a petition for certification to appeal, which the court granted. This appeal followed.

On appeal, the petitioner claims[4] that Conroy was ineffective for failing to ensure that his mother was present in court on the day jury selection was to begin because he was unable to make a decision to plead guilty without his mother's guidance.[5] More specifically,

---

[4] The petitioner has not raised or briefed the remaining claims in count one of his petition for a writ of habeas corpus, i.e., that trial counsel failed to use mitigating factors in negotiating a fair plea bargain and to ask for a guardian ad litem, nor has he raised or briefed the due process claim asserted in count two of the petition. Therefore, these claims are deemed abandoned. See *State* v. *Ouellette*, 110 Conn. App. 401, 407 n.1, 955 A.2d 582, cert. granted on other grounds, 289 Conn. 951, 961 A.2d 417 (2008).

[5] The petitioner also claims that the court improperly relied on *Groomes* v. *Commissioner of Correction*, 86 Conn. App. 486, 490, 862 A.2d 305 (2004), cert. denied, 273 Conn. 907, 868 A.2d 747 (2005), for the proposition that, if a claim of ineffectiveness of counsel is based on the petitioner's disabilities,

the petitioner claims that, had his mother been present on September 26, 2003, he would have accepted the twelve year offer.[6] We are not persuaded.

We begin by setting forth the applicable standard of review. "In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary. . . .

"A habeas petitioner can prevail on a constitutional claim of ineffective assistance of counsel [only if he can] establish both (1) deficient performance, and (2)

___

then the petitioner must show that his disabilities are "legally significant." We disagree.

The petitioner appears to overstate the court's reliance on *Groomes*. The court correctly observed that to be relevant to its analysis, any disability the petitioner was attempting to establish at the habeas trial (i.e., the inability to make decisions without his mother's assistance) would have had to have been severe enough to prevent the petitioner from entering a knowing, intelligent and voluntary plea. If the petitioner was able to show that his disability greatly affected his ability to enter a knowing, intelligent and voluntary plea, then his disability would be legally significant because such disability would affect the validity of the petitioner's plea.

As discussed previously, the court found that the petitioner's alleged mental defects did not rise to a level that Judge Iannotti, the prosecutor or trial counsel believed required an evaluation or the appointment of a guardian ad litem, and Judge Iannotti thoroughly canvassed the petitioner and found his pleas to be knowing, intelligent and voluntarily. Therefore, any disability that the petitioner may have had was not legally significant because it did not prevent him from entering a knowing, intelligent and voluntary plea. The court properly applied the relevant law in considering the petitioner's claim of disability.

[6] The petitioner further asserts that Conroy's assistance was ineffective because Conroy should have "at least asked the judge to keep the [twelve year] plea [offer] open for one day." Because the court did not address this claim and the petitioner failed to request an articulation with regard to the issue, "we cannot review [the claim] because to do so would result in an ambuscade of the habeas court." *Newsome* v. *Commissioner of Correction*, 109 Conn. App. 159, 165 n.4, 951 A.2d 582, cert. denied, 289 Conn. 918, 957 A.2d 878 (2008).

actual prejudice. . . . For ineffectiveness claims resulting from guilty verdicts, we apply the two-pronged standard set forth in *Strickland* . . . . For ineffectiveness claims resulting from guilty pleas, we apply the standard set forth in *Hill* . . . which modified *Strickland*'s prejudice prong. . . .

"To satisfy the performance prong, the petitioner must show that counsel's representation fell below an objective standard of reasonableness. . . . To satisfy the prejudice prong, the petitioner must show a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial. . . . A reviewing court can find against a petitioner on either ground, whichever is easier." (Citations omitted; internal quotation marks omitted.) *Leatherwood* v. *Commissioner of Correction*, 105 Conn. App. 644, 647, 938 A.2d 1285, cert. denied, 286 Conn. 908, 944 A.2d 979 (2008).

The petitioner does not dispute the court's findings of fact on appeal; rather, the petitioner challenges the court's legal analysis. After reviewing the record and the court's memorandum of decision, we conclude that the court properly applied the *Strickland-Hill* test. In addition, the court's conclusion that Conroy's performance was not deficient is supported by the facts. As the court found, Conroy was able to communicate with the petitioner regarding his criminal case and spoke to the petitioner's mother on a regular basis. There was no indication that the trial court, the prosecutor or Conroy had or reasonably should have had any concerns regarding the petitioner's mental abilities, such that a competency evaluation or the appointment of a guardian ad litem was needed. Additionally, although Judge Iannotti permitted the petitioner's mother to address the court and interact with the petitioner, he did not permit the petitioner's mother to speak for the petitioner in any representative capacity. Moreover, the

petitioner conferred with Conroy and addressed the court himself on several occasions, during which he discussed the concerns he had regarding the resolution of his matters. Finally, there was no evidence presented at the habeas trial or in the record that indicates that the petitioner's mother would have advised the petitioner to accept the twelve year offer had she been present in court on September 26, 2003. In fact, the opposite conclusion could be deduced from the evidence presented, given that on three occasions, when his mother was present, the petitioner failed to accept the twelve year offer. See footnote 1. Accordingly, the petitioner's claim that Conroy's assistance was ineffective fails under the performance prong of the *Strickland-Hill* test.[7]

The judgment is affirmed.

In this opinion the other judges concurred.

[7] Because we have rejected the petitioner's claim of ineffective assistance of counsel under the first prong of the *Strickland-Hill* test, we need not reach the second prong of that test regarding prejudice. See *Leatherwood* v. *Commissioner of Correction*, supra, 105 Conn. App. 647.

