******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

CHANDRA BOZELKO *v.* COMMISSIONER
OF CORRECTION
(AC 35990)

DiPentima, C. J., and Beach and Bear, Js.

*Argued October 14, 2015—officially released February 2, 2016*

(Appeal from Superior Court, judicial district of
Tolland, Cobb, J.)

*Chandra Bozelko*, self-represented, the appellant
(petitioner).

*Kathryn W. Bare*, assistant state's attorney, with
whom, on the brief, were *Kevin D. Lawlor*, state's attor-
ney, *Angela R. Macchiarulo*, senior assistant state's
attorney, and *Yamini Menon*, special deputy assistant
state's attorney, for the appellee (respondent).

*Opinion*

BEACH, J. The petitioner, Chandra Bozelko, appeals from the judgment of the habeas court denying her petition for a writ of habeas corpus. She claims that the court erred in denying her claim of ineffective assistance of trial counsel due to a failure to investigate effectively.[1] She further argues that the court abused its discretion in denying certification to appeal. We dismiss the appeal.

The petitioner claims that her counsel provided ineffective assistance in the course of defending her against charges of jury tampering. She pleaded guilty to and was convicted of making telephone calls to jurors during her criminal trial on certain otherwise unrelated prior charges.[2] The habeas court recited the following facts with respect to the jury tampering: "On the evening of October 4, 2007, while the petitioner's criminal jury trial was underway, several jurors assigned to the case received telephone calls at their residences from a telephone number identified on their respective caller identification systems as originating from Kate's Paperie, a business establishment in Greenwich, Connecticut. A male caller asked the jurors questions regarding their status as jurors and instructed the jurors that they should not find the petitioner guilty of the pending charges. The petitioner submitted an affidavit to the court indicating that she received several calls from jurors at her residence on October 8, 2007.

"The police conducted an extensive investigation and determined that the calls did not originate from Kate's Paperie or from the jurors' residences. The police determined that the caller identification information for these calls had been 'spoofed,' a process whereby the caller attaches false identity contact information to the communication. The police discovered that a 'SpoofCard' was purchased on April 12, 2007, with the computer located in the petitioner's residence and her mother's credit card. A SpoofCard allows the user to change caller identification information through the use of a computer service. A SpoofCard user also has the ability to change his or her voice to that of a male or female.

"The call records showed that 123 calls were made with the [Spoof]card beginning on April 12, 2007, and ending on October 4, 2007. Ninety-four of the calls originated from the petitioner's father's fax machine phone number, nineteen of the calls originated from the petitioner's residential phone number and ten of the calls originated from a Tracfone phone number. The Tracfone, a prepaid cell phone, was activated from the computer in the petitioner's residence. The SpoofCard and the Tracfone were used to place the phone calls to the jurors on October 4, 2007. The calls took place over the span of an hour and a half, beginning at 7:22 p.m. and ending at 8:52 p.m. All of the phone calls made

using the SpoofCard were recorded.

"A second SpoofCard was purchased on October 8, 2007, with the computer located in the petitioner's residence and a prepaid credit card that was found in the petitioner's bedroom when the search warrant was executed. The second SpoofCard and the Tracfone were used to make calls to the petitioner's residence from phone numbers spoofed to appear as if the calls originated from the jurors' residences. There were no recordings made of these calls." The habeas court further explained that, in connection with this incident, "[t]he petitioner was charged with six counts of attempt to commit tampering with a juror in violation of General Statutes §§ 53a-49 (a) (2) and 53a-154, one count of false statement in the second degree in violation of General Statutes [Rev. to 2007] § 53a-157b and one count of tampering with physical evidence in violation of General Statutes § 53a-155 (1). The petitioner was also charged with [crimes] arising from the same allegations in a separate case in the Stamford judicial district. The petitioner's exposure on these charges was approximately fifty years.

"Attorney Dean Popkin represented the petitioner. The petitioner entered a guilty plea, under the *Alford* doctrine,[3] to three counts of attempt to commit tampering with a juror on March 30, 2010. On May 24, 2010, the petitioner was sentenced to twenty-seven months incarceration on each count, to run concurrently, for a total effective sentence of twenty-seven months imprisonment.[4] The state nolled the remaining charges against the petitioner in both this case and the Stamford case."

The petitioner filed a petition for a writ of habeas corpus in August, 2010. In the operative petition, she claimed that her trial counsel was ineffective for failing to conduct an adequate pretrial investigation prior to the entry of her plea. She claimed that he did not effectively investigate the petitioner's innocent use of another telephone line in the same time frame in which the telephone calls to the jurors were taking place, and that he did not effectively investigate all of the telephone records. The court denied the petition and found that the petitioner had failed to establish both deficient performance and prejudice. The habeas court denied her petition for certification to appeal. This appeal followed.

As a threshold matter, the petitioner claims that the habeas court abused its discretion in denying her petition for certification to appeal.[5] "Faced with the habeas court's denial of certification to appeal, a petitioner's first burden is to demonstrate that the habeas court's ruling constituted an abuse of discretion. . . . A petitioner may establish an abuse of discretion by demonstrating that the issues are debatable among jurists of reason . . . [the] court could resolve the issues [in a

different manner] . . . or . . . the questions are adequate to deserve encouragement to proceed further. . . . The required determination may be made on the basis of the record before the habeas court and applicable legal principles. . . .

"In determining whether the habeas court abused its discretion in denying the petitioner's request for certification, we necessarily must consider the merits of the petitioner's underlying claims to determine whether the habeas court reasonably determined that the petitioner's appeal was frivolous. In other words, we review the petitioner's substantive claims for the purpose of ascertaining whether those claims satisfy one or more of the three criteria . . . adopted by [our Supreme Court] for determining the propriety of the habeas court's denial of the petition for certification. Absent such a showing by the petitioner, the judgment of the habeas court must be affirmed." (Citation omitted; internal quotation marks omitted.) *Ham* v. *Commissioner of Correction*, 152 Conn. App. 212, 217–18, 98 A.3d 81, cert. denied, 314 Conn. 932, 102 A.3d 83 (2014). Resolution of the petitioner's threshold claim that the court abused its discretion in denying her petition for certification to appeal requires an examination of her underlying claims, and, thus, we address these claims in turn.

The petitioner claims that the court erred: (1) in finding that her counsel's performance was not deficient, and (2) in using an incorrect standard for determining prejudice. We are not persuaded.

"In a habeas appeal, this court cannot disturb the underlying facts found by the habeas court unless they are clearly erroneous, but our review of whether the facts as found by the habeas court constituted a violation of the petitioner's constitutional right to effective assistance of counsel is plenary." (Internal quotation marks omitted.) *Williams* v. *Commissioner of Correction*, 117 Conn. App. 510, 519, 978 A.2d 1167 (2009).

"[T]he governing legal principles in cases involving claims of ineffective assistance of counsel arising in connection with guilty pleas are set forth in *Strickland* [v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)] and *Hill* [v. *Lockhart*, 474 U.S. 52, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985)]. [According to] *Strickland*, [an ineffective assistance of counsel] claim must be supported by evidence establishing that (1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance. . . . The first prong requires a showing that counsel made errors so serious that counsel was not functioning as the counsel guaranteed . . . by the [s]ixth [a]mendment. . . . Under . . . *Hill*

. . . which . . . modified the prejudice prong of the *Strickland* test for claims of ineffective assistance when the conviction resulted from a guilty plea, the evidence must demonstrate that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial." (Emphasis omitted; internal quotation marks omitted.) *Patterson* v. *Commissioner of Correction*, 150 Conn. App. 30, 35, 89 A.3d 1018 (2014). An ineffective assistance of counsel claim "will succeed only if both prongs [of *Strickland* as modified by *Hill*] are satisfied." (Internal quotation marks omitted.) *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 77, 967 A.2d 41 (2009).

I

DEFICIENT PERFORMANCE

The petitioner argues that the court erred in determining that Popkin's performance was not deficient. She contends that he rendered deficient performance in that he failed to examine the telephone records provided by the state during discovery, which show telephone calls made on the night in question from the landline at her residence, and that he failed to interview one Willie Green, since deceased. Green, an employee at Kinsella Commons, a mental health and substance abuse treatment center, allegedly was the recipient of an innocent call from the landline at the residence on the night in question. The petitioner claims that Green could have provided useful information about the call.[6] We disagree with the petitioner's claim in this regard.

The following additional findings of fact and conclusions of law were made by the habeas court. "At trial, the petitioner introduced records from AT&T and Kinsella Commons to demonstrate what additional investigation by Attorney Popkin would have revealed. The AT&T phone records submitted into evidence indicate that several calls were made from the landline at the petitioner's residence on the evening of October 4, 2007. The first outgoing phone call was made at 7:24 p.m., and the last outgoing phone call was made at 10:01 p.m. The durations of the phone calls ranged from approximately one second to four and a half minutes. The petitioner testified that the outgoing calls were made to Kinsella Commons, [a patient at the facility], relatives of [the patient], and the petitioner's sisters. The notes submitted from Kinsella Commons, handwritten by Willie Green, a supervisor of the center's residents, state that Green received a phone call from the petitioner on the evening of October 4, 2007. Green's notes indicate that the call was received at 7:45 p.m., but they do not indicate how long the phone call lasted. The AT&T phone records indicate that one phone call was made from the petitioner's residence to Kinsella Commons at 7:48 p.m., and the call ended at 7:52 p.m.

"Attorney Popkin hired an investigator in this case. The investigator attempted to contact individuals identified by the petitioner as having some involvement with the case, but they refused to speak with him. The investigator also arranged for a forensic review of the petitioner's hard drive, but the forensic examiner found more evidence on the computer that was detrimental to the petitioner than the state police had found. The court credits Attorney Popkin's testimony that he also requested the phone records to substantiate the petitioner's claimed theory of defense, but he did not find them to be helpful. The phone records did not prove that it was the petitioner making the phone calls. Moreover, Attorney Popkin determined that several brief phone calls to Kinsella Commons would not account for the hour and a half time frame during which the calls were made to the jurors.

"Attorney Popkin wrote a letter to the petitioner, recommending that she plead guilty due to the strength of the state's case against her and her lack of a viable defense. While the voice on the tape recordings of the phone calls made to the jurors using the SpoofCard was disguised in a male voice, the voice on other phone calls recorded on the card was not disguised. Attorney Popkin determined that the petitioner's defense would require her to testify, and he believed that any jury that heard the tape recordings and the petitioner's voice would determine that it was her voice on those phone calls. Attorney Popkin testified that he reviewed the tapes with the petitioner, and that she decided to plead guilty after hearing the recordings. He believed that the plea deal was very favorable in light of the exposure she faced. The sentencing court, *Rodriguez, J.*, thoroughly canvassed the petitioner regarding her plea.

"Pursuant to the foregoing, the court finds that the evidence submitted by the petitioner is insufficient to establish the existence of exculpatory information that should have been discovered had a proper investigation been conducted. Attorney Popkin's investigation was objectively reasonable under the circumstances of this case, and the petitioner has not met her burden of proving deficient performance for purposes of her ineffective assistance claim."

The court did not err in concluding that Popkin had not rendered deficient performance. He hired an investigator and examined the petitioner's defense that she was making telephone calls from the landline at her residence during the time in which the telephone calls to the jurors had been made. He found the telephone records that he had requested, in order to support the petitioner's defense theory, to be unhelpful. The records did not prove that the petitioner had made the telephone calls herself, and, because of the brief duration of the telephone calls from the landline, even if the petitioner had made those calls, she still had an hour and a half

in which to telephone the jurors using the cell phone.[7]

Popkin determined that not only were the additional telephone calls on the night in question of insufficient duration reasonably to eliminate the petitioner as the maker of the incriminating calls—for instance, the call to Green accounted for only approximately four minutes of the one and one half hour time frame in which the jurors were telephoned—but also that the jury would be able to match the voice on the tape recorded telephone calls to the petitioner's voice, which of course would be heard if she testified. Popkin testified that roughly twenty calls were made using the SpoofCard and that the caller's voice was disguised on some of the calls. He testified that other calls captured what Popkin believed to be the petitioner's real voice. He further testified that the petitioner decided to plead guilty after hearing the recordings of her voice. The court determined that Popkin's investigation was objectively reasonable under the circumstances of the case.

The petitioner argues, however, that Popkin was ineffective for not investigating the petitioner's defense further. "[C]ounsel need not track down each and every lead or personally investigate every evidentiary possibility before choosing a defense and developing it . . . [as] [e]ffective assistance of counsel imposes an obligation [on] the attorney to investigate all surrounding circumstances of the case and to explore all avenues that may potentially lead to facts relevant to the defense of the case. . . . In other words, counsel has a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary. . . . If counsel makes strategic decisions after thorough investigation, those decisions are virtually unchallengeable . . . ." (Citations omitted; internal quotation marks omitted.) *Taft* v. *Commissioner of Correction*, 159 Conn. App. 537, 547, 124 A.3d 1, cert. denied, 320 Conn. 910, A.3d (2015). We conclude that the court did not err in concluding that Popkin's performance was not constitutionally deficient.

## II

### PREJUDICE

The petitioner next argues that the habeas court relied on the superseded prejudice standard enunciated in *Copas* v. *Commissioner of Correction*, 234 Conn. 139, 151, 662 A.2d 178 (1995), and examined only the strength of the state's case. The petitioner argues that the court failed to use the proper prejudice standard articulated in *Carraway* v. *Commissioner of Correction*, 317 Conn. 594, 600 n.6, 119 A.3d 1153 (2015). We disagree.

"For claims of ineffective assistance of counsel arising out of the plea process, the United States Supreme Court has modified the [prejudice] prong of the *Strickland* test to require that the petitioner produce evidence

'that there is a reasonable probability that, but for counsel's errors, [the petitioner] would not have pleaded guilty and would have insisted on going to trial.' *Hill* v. *Lockhart*, supra, 474 U.S. 59." *Thiersaint* v. *Commissioner of Correction*, 316 Conn. 89, 101, 111 A.3d 829 (2015). In *Copas* v. *Commissioner of Correction*, supra, 234 Conn. 151, our Supreme Court interpreted *Hill* to require that in order to prove prejudice the petitioner must "demonstrate that [s]he would not have pleaded guilty, that [s]he would have insisted on going to trial, and that the evidence that had been undiscovered or the defenses [s]he claims should have been introduced were likely to have been successful at trial." In *Carraway*, our Supreme Court held that the prejudice standard enunciated in *Copas* had been overruled, sub silentio, by statements in more recent cases in which it "specifically disapproved of the petitioner's characterization of the prejudice prong as 'a reasonable probability that the result of the trial court proceedings would have been different' and instead stated that '[i]n the context of a guilty plea . . . to succeed on the prejudice prong the petitioner must demonstrate that, but for counsel's alleged ineffective performance, the petitioner would not have pleaded guilty and would have proceeded to trial.'" *Carraway* v. *Commissioner of Correction*, supra, 317 Conn. 600 n.6, citing *Washington* v. *Commissioner of Correction*, 287 Conn. 792, 835, 950 A.2d 1220 (2008) and *Crawford* v. *Commissioner of Correction*, 285 Conn. 585, 598, 940 A.2d 789 (2008).

The habeas court used the proper prejudice standard under *Carraway*. In its introductory discussion of law, the court specifically stated the same standard as that enunciated in *Carraway*. The court later specifically found: "The evidence submitted by the petitioner is insufficient to establish the existence of exculpatory information that would have changed the result in this case. The telephone records reveal that calls were made on the landline in the petitioner's residence; however, the telephone calls made to the jurors were placed on a Tracfone. The duration of the outgoing telephone calls do not amount to the time needed to attempt to tamper with the jurors. Furthermore, there is no evidence that it was the petitioner who was making the telephone calls. The only evidence of a telephone call made by the petitioner on October 4, 2007, is a four minute telephone call made to Green around 7:45 p.m. The petitioner pleaded guilty as a result of the strength of the state's case, particularly, the existence of the tape recordings featuring the petitioner's voice that the state intended to introduce into evidence, and the potential exposure that she faced if convicted. The court does not credit the petitioner's testimony that she would have gone to trial in light of these circumstances. The court finds that there is not a reasonable probability that this newly submitted evidence would have changed the petitioner's decision to plead guilty."

The court clearly assessed whether the petitioner, but for counsel's alleged ineffective performance, would not have pleaded guilty and would have proceeded to trial. The court discredited the petitioner's testimony that she would have gone to trial.[8] The court analyzed the strength of the state's case, to be sure, as the strength of the state's case played a role in the petitioner's decision to plead guilty and in the court's determination of whether that decision would likely have changed if the "new" evidence had been developed at the time of the plea. The court concluded that it was not reasonably probable that the new evidence would have changed the petitioner's mind to plead guilty. We conclude that the court used the proper standard in assessing prejudice.

After a thorough review of the record and briefs, we conclude that the petitioner did not demonstrate that the issues she has raised in her petition for certification to appeal are debatable among jurists of reason, that a court could resolve those issues differently or that the questions raised deserve encouragement to proceed further.[9] Accordingly, we conclude that the petitioner has failed to demonstrate that the court abused its discretion in denying her petition for certification to appeal.

The appeal is dismissed.

In this opinion the other judges concurred.

[1] The petitioner also claimed ineffective assistance of habeas counsel. This issue was not raised before or addressed by the habeas court and, thus, we decline to afford it review. "It is fundamental that claims of error must be distinctly raised and decided in the [habeas] court before they are reviewed on appeal. As a result, Connecticut appellate courts will not address issues not decided by the [habeas] court." (Internal quotation marks omitted.) *Tompkins* v. *Freedom of Information Commission*, 136 Conn. App. 496, 511, 46 A.3d 291 (2012).

[2] The unrelated prior charges, and the facts underlying them, for which the petitioner was ultimately convicted, are set forth in *State* v. *Bozelko*, 119 Conn. App. 483, 987 A.2d 1102, cert. denied, 295 Conn. 916, 990 A.2d 867 (2010), cert. denied, U.S. , 134 S. Ct. 1314, 188 L. Ed. 2d 331 (2014).

[3] See *North Carolina* v. *Alford*, 400 U.S. 25, 91 S. Ct. 160, 27 L. Ed 2d 162 (1970).

[4] At the time she filed the petition for a writ of habeas corpus, the petitioner was incarcerated. The respondent, the Commissioner of Correction, notes that the petitioner has completed her sentence. The appeal, however, is not moot because the petitioner was in custody at the time she filed the petition and there are collateral consequences to her conviction. See *Carpenter* v. *Commissioner of Correction*, 290 Conn. 107, 116 n.6, 961 A.2d 403 (2009).

[5] Following the filing of the appellate brief of the petitioner, who is self-represented on appeal, this court sua sponte ordered the petitioner to file a supplemental brief addressing the threshold question of whether the habeas court abused its discretion in denying certification to appeal. The petitioner filed a supplemental brief addressing the issue.

[6] The petitioner presented the scenario that, during the relevant time frame, she pursued legal business regarding a resident of Kinsella Commons. Green was an employee of Kinsella Commons who took a message from the petitioner.

[7] At oral argument before this court, the petitioner conceded that the telephone records did not show that calls from the cell phone to jurors necessarily overlapped with any call from the landline to Green.

[8] The petitioner argues that her plea under the *Alford* doctrine was rendered involuntary by Popkin's failure to investigate, leaving her with no choice but to plead guilty. The petitioner did not raise this claim on direct appeal, or before the habeas court where a determination could have been

made if cause and prejudice existed so as to excuse procedural default. See *Taylor* v. *Commissioner of Correction*, 94 Conn. App. 772, 784–86, 895 A.2d 246 (2006) (setting forth cause and prejudice standard in context of excusing procedural default), rev'd on other grounds, 284 Conn. 433, 936 A.2d 611 (2007). This argument essentially is a restating of her ineffective assistance of counsel claim. The habeas court discredited her testimony that she would have gone to trial even if she had been aware at the time of the plea of all the evidence adduced at the habeas trial. Furthermore, the habeas court determined, in dicta, that the *Alford* plea was voluntary.

[9] The petitioner also argues that it was improper for the same judge who presided over the habeas trial to rule on the motion for certification to appeal because "any judge who reviews her own work and certifies whether it can be appealed is not a fair arbitrator," thus, violating the due process clause of the fourteenth amendment to the federal constitution. "Connecticut's appellate courts [generally] do not review judicial disqualification claims raised for the first time on appeal because the parties, by failing to object, are deemed to have consented to the participation of the allegedly disqualified judge." *State* v. *Rizzo*, 303 Conn. 71, 115, 31 A.3d 1094 (2011), cert. denied,     U.S.    , 133 S. Ct. 133, 184 L. Ed. 2d 64 (2012). We will note, however, that "[t]he United States Supreme Court consistently has held that a judge's failure to disqualify himself or herself will implicate the due process clause only when the right to disqualification arises from actual bias on the part of that judge." (Emphasis omitted.) *State* v. *Canales*, 281 Conn. 572, 594, 916 A.2d 767 (2007). The petitioner makes no claim of actual bias; thus, due process concerns are not implicated. See *Francis* v. *Commissioner of Correction*, 142 Conn. App. 530, 546, 66 A.3d 501 ("[I]t is well settled that a judge's involvement in more than one stage of a criminal case does not per se create an appearance of partiality requiring disqualification. Indeed, as our Supreme Court has stated: '[T]he law presumes that duly elected or appointed judges, consistent with their oaths of office, will perform their duties impartially,' and 'a judge's participation in the preliminary stages of a case, and the knowledge he or she thereby gains, will not ordinarily preclude his or her continued participation in the same case thereafter.' "), cert. denied, 310 Conn. 921, 77 A.3d 141 (2013), quoting *State* v. *Rizzo*, supra, 119–20. We additionally note that General Statutes § 52-470 (g) specifically provides that the petition for certification is to be presented to the judge who tried the habeas corpus proceeding, unless that judge is unavailable.

———————————————